UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

          v.                      :

DANIEL TZVETKOFF,                 :

          Defendant.             :

- - - - - - - - - - - - - - - x



## COUNT ONE

(GAMBLING CONSPIRACY)

The Grand Jury charges:

BACKGROUND

1.    Since at least in or about February 2008 up to and including at least March 2009, DANIEL TZVETKOFF, the defendant, has been in the business of providing payment processing services through Intabill, Inc. ("Intabill"), an Australia-based corporation, for internet gambling businesses seeking to illegally operate in the United States, including in the Southern District of New York.  Specifically, TZVETKOFF provided a means for various internet gambling businesses to obtain funds directly from the checking accounts of United States-based gamblers so that they could gamble online.  TZVETKOFF also provided a means for those internet gambling businesses to transfer gambling winnings directly to the United States-based checking accounts of their players.

2.    At all times relevant to this Indictment, DANIEL TZVETKOFF, the defendant, utilized the Automated Clearinghouse

(or "ACH") system to transfer funds between United States
checking accounts and various internet gambling businesses.  The
ACH system, which is administered by the Federal Reserve, allows
for fast and efficient electronic funds transfers to and from
individuals' checking accounts through "e-checks" or "electronic
checks."  Companies with access to the ACH system can "pull"
money from an individual gambler's bank accounts (i.e., debit the
gambler's account) and route it to internet gambling businesses,
and also "push" money from the internet gambling businesses into
an individual gambler's checking accounts to pay winnings (i.e.,
credit the gambler's account).  Internet gambling businesses
generally rely on the ACH system for processing payments from and
to gamblers in the United States because the vast majority of
United States banks block their credit card holders from using
credit cards to gamble on internet websites.

       3.   At all times relevant to the Indictment, DANIEL
TZVETKOFF, the defendant, resided principally in Australia.
However, TZVETKOFF traveled to the United States in connection
with Intabill's payment processing business, and he used several
other means, including the services of a representative in the
United States (the "Intabill Representative"), and the services
of United States ACH companies (the "ACH Companies"), to locate
and contact banks in the United States that would process
Intabill's internet gambling transactions.

4.    In order to induce United States banks and financial institutions to provide ACH services to internet gambling businesses, DANIEL TZVETKOFF, the defendant, and co-conspirators not named as defendants herein, made and caused to be made false statements and material misrepresentations to various United States banks and financial institutions about the merchants whose transactions were being processed and about the nature of the ACH transactions.  In an e-mail dated March 12, 2009 (the "March 12 e-Mail") TZVETKOFF instructed the Intabill Representative to e-mail banks from a non-Intabill e-mail address, to tell the banks that the Intabill Representative "was referred to them by another processor or bank or something along those lines," and to claim that the Intabill Representative "work[s] for a large processor of general e-commerce."  Based on this and other similar instructions, TZVETKOFF's co-conspirators falsely represented to various banks and ACH Companies that the gambling transactions processed through those banks and ACH Companies constituted, among other things, the repayment of payday loans (short term loans, typically at high rates of interest) that consumers had taken out online, the transfer of funds from checking accounts to pre-paid debit cards that could allegedly be used for various purchases, and purchases by consumers on general e-commerce websites.

5.    After Intabill had established a relationship with

3

a United States bank, DANIEL TZVETKOFF, the defendant, and co-conspirators not named as defendants herein, took further steps to ensure that the gambling transactions they were processing were disguised as something else.  Although the gambling transactions Intabill was processing were on behalf of several well-known internet gambling websites, TZVETKOFF and his co-conspirators created dozens of phony shell companies with names unrelated to gambling and processed the transactions under the names of these companies. TZVETKOFF and his co-conspirators obtained unique web sites and toll free numbers for these shell companies and developed phony web sites to make the companies appear to have a valid, non-gambling purpose.  For example, in the March 12 e-mail, TZVETKOFF directed the Intabill Representative to "buy some shelf companies that the BVI's [apparently a reference to the British Virgin Islands] will own. Companies that are more then a year old would be perfect.  We need to then rename each company to be called something processing related."  In another example, on May 3, 2008 a co-conspirator not named as a defendant herein ("CC-1") e-mailed TZVETKOFF that CC-1 had "hired 4 contract programmers to develop unique APIs/URLs for the new processing companies" and that therefore "[t]he ACH companies will look, feel, and be different than each other!!"  CC-1 went on: "We have taken this step to absolutely ensure that no one company will look or be the same as

4

the other so that if a customer/client is checking the companies out there is absolutely no way they will tie the companies together." One minute later TZVETKOFF responded: "this is all perfect!"

6.    Between in or about February 2008 and in or about March 2009, Intabill processed more than $543 million worth of ACH transactions in the United States, the overwhelming majority of which were for internet gambling businesses, including websites offering online "real money" poker and blackjack.   In virtually all cases the transactions were disguised as being unrelated to gambling.

7.    At all times relevant to the Indictment, DANIEL TZVETKOFF, the defendant, directed that the proceeds of the gambling transactions be wired to various bank accounts, and principally to bank accounts located outside the United States. TZVETKOFF also directed that approximately $27 million in proceeds from the gambling transactions be directed to an investment in a payday loan company based in the United States so that the funds could be lent – typically at an annualized interest rate of more than 500% – to applicants applying for such loans over the internet.

8.    In or about March 2009 DANIEL TZVETKOFF, the defendant, ceased processing most gambling transactions through Intabill after leading internet gambling websites accused

TZVETKOFF of stealing approximately $100 million in gambling pay-
ins that it had collected from the bank accounts of United States
customers.

## THE OFFENSE

9.    From at least in or about February 2008 up to
and including in or about March 2009, in the Southern District of
New York and elsewhere, DANIEL TZVETKOFF, the defendant, and
others known and unknown, unlawfully, willfully, and knowingly
did combine, conspire, confederate, and agree together and with
each other to commit offenses against the United States, to wit,
violations of Title 18, United States Code, Section 1955 and
Title 31 United States Code, Sections 5363 and 5366.

10.    It was a part and an object of said conspiracy
that DANIEL TZVETKOFF, the defendant, and others known and
unknown, unlawfully, willfully, and knowingly would and did
conduct, finance, manage, supervise, direct, and own all and part
of an illegal gambling businesses, namely businesses that engaged
in and facilitated online poker and blackjack games, in violation
of New York State Penal Law Sections 225.00 and 225.05, and which
business involved five and more persons who conducted, financed,
managed, supervised, directed, and owned all and part of it, and
which business had been and had remained in substantially
continuous operation for a period in excess of thirty days and

had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Section 1955.

11. It was further a part and an object of said conspiracy that DANIEL TZVETKOFF, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, with persons engaged in the business of betting and wagering, would and did knowingly accept, in connection with the participation of another person in unlawful internet gambling, to wit, gambling in violation of New York Penal Law Sections 225.00 and 225.05, an electronic fund transfer and the proceeds of an electronic fund transfer from and on behalf of such other person, in violation of Title 31 United States Code, Sections 5363 and 5366.

<u>OVERT ACT</u>

12. In furtherance of said conspiracy and to effect the illegal objects thereof, DANIEL TZVETKOFF, the defendant, and others known and unknown, committed the following overt act, among others, in the Southern District of New York and elsewhere:

a. On or about February 11, 2008 TZVETKOFF and CC-1 started processing internet gambling transactions for customers throughout the United States, including in the Southern District of New York.

(Title 18, United States Code, Section 371.)

7

## COUNT TWO

(BANK FRAUD CONSPIRACY)

The Grand Jury further charges:

13.   The allegations set forth in paragraphs 1 through 8 of the Indictment are repeated and realleged as if set forth fully herein.

14.   From at least in or about February 2008, up to and including in or about March 2009, in the Southern District of New York and elsewhere, DANIEL TZVETKOFF, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense under Chapter 63 of Title 18, United States Code, to wit, a violation of Title 18, United States Code, Section 1344.

15.   It was a part and an object of said conspiracy that DANIEL TZVETKOFF, the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United

States Code, Section 1344.

(Title 18, United States Code, Section 1349).

## COUNT THREE

(MONEY LAUNDERING CONSPIRACY)

The Grand Jury further charges:

16.   The allegations set forth in paragraphs 1 through 8 of the Indictment are repeated and realleged as if set forth fully herein.

17.   From at least in or about February 2008, up to and including in or about March 2009, in the Southern District of New York and elsewhere, DANIEL TZVETKOFF, the defendant, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Sections 1956 and 1957.

18.   It was a part and an object of said conspiracy that DANIEL TZVETKOFF, the defendant, and others known and unknown, would and did transport, transmit and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, to wit, the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

9

19.   It was further a part and an object of said conspiracy that DANIEL TZVETKOFF, the defendant, and others known and unknown, in an offense that took place in the United States, unlawfully, willfully and knowingly, would and did engage in monetary transactions in criminally derived property of a value greater than $10,000 and which was derived from specified unlawful activity, to wit, the operation of an illegal gambling business, in violation of Title 18, United States Code, Sections 1084, 1952 and 1955, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

### COUNT FOUR

(MONEY LAUNDERING)

The Grand Jury further charges:

20.   The allegations set forth in paragraphs 1 through 8 of the Indictment are repeated and realleged as if set forth fully herein.

21.   From at least in or about February 2008, up to and including in or about March 2009, in the Southern District of New York and elsewhere, DANIEL TZVETKOFF, the defendant, unlawfully, willfully and knowingly would and did transport, transmit and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States

with intent to promote the carrying on of a specified unlawful activity, to wit, the operation of an illegal gambling business.

(Title 18, United States Code, Section 1956(a)(2)(A).)

## FORFEITURE ALLEGATION AS TO COUNT ONE

22.  As a result of committing the offense of conspiracy to violate 18 U.S.C. § 1955 alleged in Count One of this Indictment, DANIEL TZVETKOFF, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the gambling conspiracy offense, including but not limited to the following:

a.   At least $543,210,092 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the gambling conspiracy offense.

Substitute Asset Provision

23.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the

11

Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. §

853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 1955;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

### FORFEITURE ALLEGATION AS TO COUNT TWO

        24.  As a result of committing the offense of

conspiracy to violate 18 U.S.C. § 1344 alleged in Count Two of

this Indictment, DANIEL TZVETKOFF, the defendant, shall forfeit

to the United States pursuant to 18 U.S.C. § 982, any property

constituting or derived from proceeds obtained directly or

indirectly as a result of the bank fraud conspiracy offense,

including but not limited to the following:

        a.   At least $543,210,092 in United States currency,

in that such sum in aggregate is property representing the amount

of proceeds obtained as a result of the bank fraud conspiracy

offense.

### Substitute Asset Provision

        25.  If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property. (Title 18, United States Code, Sections 982 and 1344.)

### FORFEITURE ALLEGATION AS TO COUNTS THREE AND FOUR

26.    As a result of committing the offense of conspiracy to violate 18 U.S.C. §§ 1956 and 1957 alleged in Count Three of this Indictment, and the violation of 18 U.S.C. § 1956 alleged in Count Four of this Indictment, DANIEL TZVETKOFF, the defendant, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering conspiracy offenses and all property traceable to such property, including but not limited to the following:

a.    At least approximately $543,210,092 in United

13

States currency, in that such sum in aggregate is property which was involved in the money laundering offense or is traceable to such property.

<u>Substitute Asset Provision</u>

27.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982, 1956 and 1957.)


_____
FOREPERSON

_Preet Bharara_____
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### DANIEL TZVETKOFF,

Defendant.

### INDICTMENT

10 Cr. _____

(18 U.S.C. §§ 1349, 1955, 1956)

PREET BHARARA
United States Attorney.

A true bill.

4-15-10
MB
Filed indictment Under Seal ... Ellis, USMJ